## GRAVIER'S CURATOR *vs.* CULLION ET AL.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF NEW ORLEANS.

A person who is cited in warranty cannot be called and sworn as a witness for the plaintiff therein. He stands as a real party in interest to warrant the title of the defendant.

EASTERN DIST.
June, 1837.

GRAVIER'S
CURATOR
vs.
CULLION ET AL.

A motion to file a supplemental petition and take the answer of the warrantor to written interrogatories, comes too late after the trial has commenced.

Third persons in possession are not bound to prove by counter-letter the simulation of a contract between others, who claim the property, but may make good their allegation by any other legal evidence.

Where simulation in a sale is charged by the possessors of property, and who were not parties to this sale, the jury will be supported in their verdict finding the simulation, by presumptive and circumstantial evidence.

This is a petitory action. The plaintiff alleges that John Gravier, whose estate he represents, purchased a lot of ground forty feet front on Girod street, in New-Orleans, by one hundred and eighty in depth, at the probate sale of the succession of Pierre Cullion, deceased, the 14th October, 1822, and that on the 16th of that month Jean Laurel, the testamentary executor made him a title by notarial act. He further shows that Gravier for some time before his death suffered his affairs to become much deranged, and that the defendant, Elizabeth Cullion, f. w. c., in 1828, took possession of said lot, and has since sold a part of it to one Alexander Baggett, who are together in possession of the entire lot. He prays judgment declaring said property to belong to the succession of said John Gravier.

The defendants denied that the plaintiff had any right or title to the premises in dispute, in behalf of Gravier's estate. They averred that the property in question belonged to the succession of the late Pierre Cullion, and that in 1828, his testamentary executor, Jean Laurel, was ordered by the Court of Probates, and that his succession being divided among his three natural children, this lot and the improvements became the share of Elizabeth, (one of the defendants,) who was one of them. They expressly aver that the pretended sale by the testamentary executor to Gravier, was simulated, and null and void. That the children of Cullion were then minors, and the executor had no authority to sell; that in

making said sale none of the forms required in the sale of <span style="float:right">EASTERN DIST.</span>
minors' property were observed. <span style="float:right">June, 1837.</span>

The defendants called in warranty Marie F. Cullion, Jean <span style="float:right">GRAVIER'S</span>
P. Cullion, co-heirs of the defendant, Elizabeth, on the <span style="float:right">CURATOR</span>
<span style="float:right">vs.</span>
ground of their liability resulting from the act of partition <span style="float:right">CULLION ET AL.</span>
among them of their deceased father's estate, in 1828, and
likewise Jean Laurel, the testamentary executor of the
ancestor of these heirs.

The executor pleaded a general denial.

The co-heirs cited in warranty averred that the sale from
the testamentary executor to Gravier was simulated, null and
void ; that the children of Pierre Cullion were all minors at
the time, and not represented, and none of the forms for the
sale of minors' property were observed in this case.

Upon these pleadings and issues, the cause was tried
before a jury.

Laurel, the late testamentary executor of P. Cullion, after-
wards pleaded a peremptory exception, that he was in no
way liable in warranty as executor, and prayed to be
dismissed. The plaintiff joined in this exception and prayed
for the dismissal of Laurel. The exceptions were not
disposed of.

On the trial the plaintiff offered Laurel as a witness, which
was objected to on the ground that he was a party to the
suit on the record, and the objection sustained.

The attorney for the plaintiff then moved that his answer
in writing to written interrogatories be taken on oath and
admitted as evidence, which was also objected to, and the
objection sustained.

Parole and documentary evidence was produced to show
and support the title on both sides, and to prove the simula-
tion in the sale by the executor of Cullion to Gravier.

The jury returned a verdict for the defendants, and from
judgment rendered thereon, the plaintiff appealed.

*L. Janin* and *Denis*, for the plaintiff.

1. The object of this suit is the recovery of a lot of ground
in Girod street, and a small house on it, which was bought

EASTERN DIST.
June, 1837.

GRAVIER'S
CURATOR
vs.
CULLION ET AL.

by John Gravier, on the 14th October, 1822, at the probate sale of the property of one Pierre Cullion, and which never was alienated by Gravier, and is therefore considered as belonging to his estate.

2. The defence is, that the sale from Jean Laurel, Cullion's executor, to Gravier, was simulated, or rather, that Gravier bid in the property for Laurel ; that it, therefore, never ceased to belong to Cullion's estate, until by a partition or compromise between Cullion's legatees, it fell to the share of the defendant, one of those legatees.

3. The notarial sale to Gravier, states, that the lot was adjudicated to him for one thousand one hundred and five dollars ; that according to the terms of the adjudication he paid two hundred and seventy-six dollars and twenty-five cents, cash, (one fourth of the price,) *in the presence of the notary*, and gave for the balance of eight hundred and twenty-eight dollars and seventy-five cents, two notes at one and two years. These two notes were never paid by Gravier, and are found in the record.

4. In 1824, the house and lot were rented to Elizabeth Cullion, the present defendant, and she occupied it, when on the 24th November, 1827, Laurel, the testamentary executor, renewed his account. This account was contested, and after various proceedings, the Court of Probates amended it by declaring the above mentioned sale simulated, and ordering the property to be brought back to the estate. It was already, as has been shown, in the possession of one of the heirs, who acquired the exclusive title to it by a compromise with her co-heirs.

5. Gravier was no party to these proceedings, and it is obvious that this judgment of the Court of Probates could not affect his rights. The question then again recurs, whether the sale was indeed simulated.

6. The strict truth of the matter is, that the sale was genuine ; that Gravier was, in 1822, at the time of the sale, and still more during the following years, when his notes fell due, overwhelmed by debts, judgments and seizures ; that he paid neither these notes nor other more pressing demands on

him, that he neglected his business entirely, and that he
cared little what became of this lot, and allowed the executor and the legatees to settle their matters as they pleased, pro-
vided they did not trouble him for the payment of the notes. If Gravier was indeed aware of what was going on, which is more than doubtful, he felt no interest in interfering, for he would have found it difficult to pay the notes, had he been inclined to do so, and his other creditors would immediately have seized the lot, if it had been free from mortgage.

7. But to the curator of Gravier's estate it is not permitted to imitate Gravier's reckless and desperate carelessness ; and if it be true that the title was legally vested in Gravier, who never parted with it, the curator must assist it.

8. Had the executor indeed intended to buy this lot through an interposed person, he would not have chosen Gravier, over whom several seizures were nearly constantly impending, and whose property was hardly ever free from judicial mortgages. Gravier never covered other people's property ; he found it necessary to put his own very frequently in other people's names.

9. But there is direct testimony, from which it follows, that the sale was serious.

10. The cash payment was made in the presence of the notary.

11. Previous to the sale, the proceeds of the sale were ordered to be deposited in bank, at the instance of the attorney for the absent heirs. This order is of the 7th September, the sale of the 14th October, 1822. The executor, therefore, knew that his proceedings would be closely watched, and the payment of the obligation enforced.

12. On the 29th October, 1823, shortly after Gravier's first note fell due, the obligations were given up to the executor, on his giving security, and by him delivered to his counsel.

13. Gravier's two notes were regularly protested on the days on which they fell due.

14. Subsequently, (in 1826,) the executor's attorney in fact, and his counsel, delivered these notes to the attorney appointed to represent the absent heirs, "for the purpose of

Eastern Dist.
June, 1837.

GRAVIER'S
CURATOR
vs.
CULLION ET AL.

devising the means of recovering the amount thereof," but nothing was then done.

15. In 1827, the executor filed an account in which he debits himself with the whole amount of the purchase money, and credits himself with the amount of the two protested notes, which, he says, "remain in the hands of H. R. Denis, Esq., where the same were placed to be recovered by legal process."

16. To this account he charged Elizabeth Cullion with the rent of the house in dispute. This was no doubt irregular, but it may well be presumed that he intended to credit Gravier's notes with this amount. Gravier may indeed have considered it preposterous to trouble the legatee for the rent, when she did not trouble him for the payment of his notes; he left it to the executor to settle the matter.

17. Elizabeth Cullion, and the other legatees, opposed the executor's account. Two of the grounds of her opposition were, that she could not be liable for rent to the executor, when *she had rented the house from Gravier*, and that the executor was bound for Gravier's notes, *because he had neglected to collect them.*

18. They could not have admitted in a more positive manner, the genuineness of the sale to Gravier, and assuredly the conduct of the executor evinces a sincere desire to enforce payment. Thus far the pretended simulation was not thought of by any of the parties.

19. But about a fortnight later, the same parties filed a supplemental opposition, in which they allege that the sale to Gravier was simulated. 6 *Martin*, 280.

20. It is difficult to conceive how this could destroy the effect of their former judicial admission; nevertheless, the Probate Court declared the sale simulated, without taking any notice of Gravier, and *upon no other testimony but that* of one Jean Barthet, f. m. c., who said that Laurel had paid taxes and made repairs on the houses sold to Gravier and Casteres, and that he had seen several receipts for rents made out in Laurel's name. And while by this most extraordinary judgment, the sales were set aside, the cash payments

received on them remained to the credit of the estate ; the <span>EASTERN DIST. <i>June,</i> 1837.</span> executor was compelled to pay them over, and was allowed his commission on them.

<span>GRAVIER'S CURATOR <i>vs.</i> CULLION ET AL.</span>

21. Thus the matter stood in 1828. Has the simulation been proved more clearly at the trial of the present case ? Two witnesses only speak of it, the one is the same Jean Barthet, who was examined in 1828. He now, for the first time, relates a conversation which he had with Gravier, in 1827, which would be important if it were true, and which he would undoubtedly have stated in 1828, at his former examination, if he had not invented it since. And even his testimony shows that Laurel considered and treated the sale as real. The other witness is the counsel who obtained the judgment of the Probate Court, by which the sale was declared simulated, and who states only vague impressions and indistinct recollections without either giving the grounds of his belief, or relating any facts within his knowledge.

22. It is evident that the testimony of Jean Laurel would have been very material in this case. It was rejected, and a bill of exceptions taken to the opinion of the court. For a correct understanding of this bill of exceptions, it ought to be observed, that Laurel was called in warranty, excepted to this· call, and that this exception never was disposed of. *Spencer's syndic* vs. *Lee,* 2 *Louisiana Reports,* 473. *Franklin's Curator* vs. *Soward,* 3 *Louisiana Reports,* 272. These two authorities establish, that if a nominal defendant has no interest in the suit, he may be examined as witness.

*D.* and *J. Seghers,* for the defendants, and appellees, contended, that the plaintiff failed to make out his case, and that the judgment and verdict should stand.

*Bullard, J.,* delivered the opinion of the court.

The plaintiff, as curator of the estate of John Gravier, sues to recover a lot of ground in the faubourg St. Mary, which was adjudicated to his intestate, at a probate sale, in 1822, provoked by Jean Laurel, executor of the last will of Pierre Cullion. The defendants, one of whom is one of the heirs of

EASTERN DIST.
June, 1837.

GRAVIER'S
CURATOR
sv.
CULLION ET AL.

P. Cullion, and the other her vendee of a part of the same lot, aver in their answer, that the sale from Laurel to Gravier was simulated and fraudulent; that Gravier never was in possession, and never paid the price, but acted as a person interposed, and that in truth, Laurel was the real purchaser, and that afterwards the sale was rescinded by the Court of Probates, and Laurel ordered to restore the property to the heirs, which was accordingly done, with the full knowledge of Gravier; Laurel was cited as warrantor.

The case was tried by a jury, who found a verdict for the defendants, and the plaintiff appealed.

A person who is cited in warranty cannot be called and sworn as a witness for the plaintiff therein. He stands as a real party in interest, to warrant the title of the defendant.

Our attention is first called to a bill of exceptions, from which it appears that the court refused to permit Jean Laurel, the late executor, to be sworn as a witness on the part of the plaintiff, on the ground that he was a party to the present suit. We think the court did not err. It is true, that when a person is only a *nominal* party, he may, in some cases be a competent witness; but in this case Laurel stands as a real party in interest, a warrantor of the title of the defendant. 5 *Martin, N. S.*, 7.

A motion to file a supplemental petition, and take the answer of the warrantor to written interrogatories, comes too late after the trial has commenced.

It further appears that the plaintiff's attorney thereupon moved to take the answer of Laurel to written interrogatories, and for that purpose to file a supplemental petition. We concur in the opinion expressed by the court below, that the application came too late after the trial had commenced.

The question of simulation and fraud was submitted to the jury, and their verdict must stand, unless we should be satisfied that it is clearly against law or unsupported by evidence.

Third persons in possession are not bound to prove by counter letter the simulation of a contract between others, who claim the property, but may make good their allegation by any other legal evidence.

The plaintiff who represents the estate of Gravier, does not present himself in this case under more favorable circumstances than Gravier himself would if he were plaintiff in the case. The defendants, on the contrary, must be considered as strangers to the contract between Laurel and Gravier. They are not, therefore, bound to prove by counter letter the simulation of the contract, but may make good their allegation by any species of legal evidence.

EASTERN DIST.
June, 1857.

GRAVIER'S
CURATOR
vs.
CULLION ET AL.

In support of the plaintiff's title, he exhibits a conveyance from Laurel, as executor, from which it would appear that the lot in dispute, together with other property of the succession of Cullion, was sold at auction in pursuance of a decree of the Court of Probates; that Gravier had become the purchaser of the lot, and paid a part of the price down, and gave his notes for the balance.

On the other hand it is shown that Gravier never went into possession, nor ever exercised any acts of ownership; that his notes were never paid ; that he declared he purchased for Laurel and would not pay; that Laurel made repairs and continued to possess as if no sale had taken place, and that the defendant, Elizabeth Cullion, has been in possession since 1824. It is further shown, that the simulation of the contract was judicially established as between Laurel and the heirs of Cullion, and that he surrendered the property to them in pursuance of that decision.

All these facts amount certainly to strong presumptive evidence, that the contract was not real. It is true, as contended by the plaintiff, that the judgment of the Court of Probates has not the form of the thing adjudged against Gravier, because he was not a party ; but it is clear, he stood by and saw that judgment executed by Laurel, without opposition, and that he took no steps during his life time, either before or after, to obtain possession of the lot in dispute. The fact that the vendor retains possession, is generally a badge of fraud, or furnishes a presumption of simulation. The proof of the declaration made by Gravier, that he bought for Laurel, would not be entitled to much consideration, if it stood alone, and was not in harmony with his whole conduct in relation to the contract. The jury might well think that the acts of Gravier were susceptible of no other interpretation than his own declaration purports, to wit: that he had lent his name to Laurel for the purpose of divesting the heirs of their title, for the exclusive benefit of Laurel, who, as executor, was incapable of making the purchase in his own name.

But it is contended by the counsel for the appellant, that the defendant, Elizabeth Cullion, in her opposition to the account filed by the executor, in which she was charged with the rent of the house and lot, for five years, alleged that she had rented the house from Gravier, and not from Laurel, and that she is bound by this judicial avowal. To this, it may be said, in reply, that the whole of the party's answer and opposition must be taken together. It cannot be separated, and that part selected, which, if standing alone might prejudice her right. The answer and a supplemental answer, form but one. In the supplemental answer she denies the right both of Gravier and of Laurel, by alleging the simulation of the contract; she thus assumed the same ground which she yet maintains, that the heirs had never been divested of title.

It is further urged, that John Gravier, so far from ever covering the property of others by simulated contracts, was constantly harassed by his creditors, and in the habit of screening his own property by similar contrivances. It would certainly be difficult to prove so broad a negative, as that he never reciprocated such favors, but the averred fact, that he was in the habit of covering his own property, proves that he had no particular scruples on the subject, and tends to show that he may on particular occasions have lent himself to his friends, if they chose to run the risk. It is not easy to account for the conduct of the parties upon any other hypothesis, than that the sale was not real, and upon a review of the evidence, upon which the jury proceeded, we are unable to say that their finding ought to be disturbed.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.